

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

ENTERED
04/18/2014

| | | |
|---|---|---|
| IN RE: | § | |
| **BILLY SHELTON, HILDA SHELTON** | § | **CASE NO: 13-70583** |
| Debtor(s) | § | |
| | § | **CHAPTER 13** |
| | § | |
| **BILLY SHELTON, *et al*** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 13-07022** |
| | § | |
| **AGUIRRE AND PATTERSON, INC, *et al*** | § | |
| Defendant(s) | § | |

### <u>MEMORANDUM OPINION</u>

Defendants, Frank Arevalo, Elsa State Bank and Trust Company, and Aguirre & Patterson Inc., have filed motions to dismiss Plaintiffs' suit for failure to state a claim upon which relief can be granted. (ECF No. 4); (ECF No. 10).

As set forth below, this Court lacks authority to enter a final order dismissing Plaintiffs' claims. The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.

As currently pled, the Plaintiffs' complaint fails to state a claim upon which relief can be granted. Plaintiffs are granted leave to amend their complaint with respect to each of its claims until May 8, 2014. If Plaintiffs fail to amend their complaint to satisfy the applicable pleading requirements, the Court will recommend that the District Court grant the defendants' motions to dismiss.

### Procedural Background

Plaintiffs, Billy Shelton and Hilda Shelton, filed this civil suit on August 1, 2013 in the 389th Judicial Court of Hidalgo County, Texas. The defendants are Elsa State Bank, Frank

Arevalo, a loan officer with the Bank, and Aguirre & Patterson, Inc., the company hired to appraise the Plaintiffs' property in connection with the loan agreement between Elsa State Bank and the Plaintiffs.   The Plaintiffs assert the following claims against each of the defendants: breach of contract, breach of fiduciary duty, common law fraud, fraudulent inducement, constructive fraud, negligent misrepresentation, promissory estoppel, and declaratory relief. (ECF No. 4).

On November 4, 2013, the Sheltons filed a Chapter 13 bankruptcy petition. (Case No. 13-70583 at ECF No. 1).  On November 14, 2013, the Sheltons initiated this adversary proceeding on the same issues that they raised in state court.  (Case No. 13-07022, ECF No. 1).  On January 16, 2014, Defendants Frank Arevalo and Elsa State Bank filed its notice of removal of Plaintiffs' original complaint filed in state court.  (ECF No. 14-07001, ECF No. 1).  On April 3, 2014, the Court issued an Order consolidating these two adversary proceedings. (ECF No. 13-07022, ECF No. 13).

On February 4, 2014, Defendants Frank Arevalo and Elsa State Bank filed a motion to dismiss Plaintiffs' suit for failure to state a claim upon which relief can be granted.  (ECF No. 4). On February 27, 2014, Defendant Aguirre & Patterson filed a motion to dismiss Plaintiffs' suit. (ECF No. 10).  On March 7, 2014, Plaintiffs filed a response to Defendants Elsa State Bank and Frank Arevalo's motion to dismiss. (ECF No. 12).   In the alternative, Plaintiffs request the opportunity to replead their claims to comply with the findings of the Court. (ECF No. 12 at 6).

## Fact Summary

On June 20, 2010, the Sheltons executed a loan agreement with Defendant Elsa State Bank to refinance existing debt with another lender.[1]  The note was secured by a deed of trust on

---

[1] Plaintiffs allege that the agreement was executed on April 26, 2010, but the promissory note is dated June 20, 2010.

real property, which the Sheltons surrendered in their Chapter 13 plan. (Case No. 13-70583, ECF No. 26).  Defendant Aguirre & Patterson performed an appraisal of the real property offered as collateral for the loan.  (ECF No. 1 at 3).

The Sheltons allege that Defendants, Elsa State Bank, Frank Arevalo, and Aguirre & Patterson made false representations and failed to disclose material information to the Sheltons relating to the appraisal performed by Aguirre & Patterson.  They allege that all three defendants failed to disclose that Aguirre & Patterson was performing the appraisal for the benefit of the bank.  (ECF No. 1 at 3-5).

The Sheltons further allege that Frank Arevalo and Elsa State Bank made false representations to the Sheltons stating that the loan was based upon the true value of the property and that the appraisal was independent. *Id*.  The Sheltons contend that Aguirre & Patterson over-valued Plaintiffs' property, used improper "comparable" properties in its appraisal, and that each defendant knew or should have known about these misrepresentations. *Id*.

The Sheltons claim that the defendants' misrepresentations and nondisclosures induced Plaintiffs to enter into the loan agreement with defendant Elsa State Bank, which ultimately imposed upon the Plaintiffs "a financial burden which would impose serious strain upon their financial well being and cause them great emotional distress and mental anguish." (ECF No. 1).

### Authority to Adjudicate Plaintiffs' State Law Claims

There is a preliminary question of whether this court has the authority finally to adjudicate Plaintiffs' state law claims against defendants in this case.  The Court holds that it does not have the authority finally to adjudicate Plaintiffs' claims.  The Court may, however, issue interlocutory orders, including an order granting Plaintiffs leave to amend their complaint.

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, exercise authority over essential bankruptcy matters under the "public rights exception." Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n.11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

Many bankruptcy proceedings likely fall outside the public rights exception. The Supreme Court has held that a fraudulent conveyance suit, filed under § 548 of the Bankruptcy Code against a party that had not filed a claim against the estate, fell outside the public rights exception. *Granfinanciera*, 492 U.S. at 55-56. The public rights exception is likely even more limited when claims are asserted under non-bankruptcy law. After *Stern*, the Court's authority over state-law matters is particularly questionable.

### A.  Fifth Circuit Cases Interpreting *Stern v. Marshall*

The Fifth Circuit has recently decided two important cases interpreting *Stern v. Marshall*. In *In re BP RE*, the Fifth Circuit held that parties cannot consent to a bankruptcy court's adjudication of claims that are outside the constitutional scope of a bankruptcy court's authority. *In re BP RE, L.P.*, 735 F.3d 279, 286-87 (5th Cir. 2013)("We adopt the compelling and thorough reasoning of *Waldman*, which held that parties cannot consent to such circumvention of Article III that impinges on the structural interests of the Judicial Branch. *Waldman* was the first post-*Stern* appellate decision to address consent as it relates to the bankruptcy court's constitutional authority.").

In *In re Frazin*, the Court considered whether three state law causes of action brought by the Debtor fell within a bankruptcy court's authority. *In re Frazin*, 732 F.3d 313 (5th Cir. 2013). Defendant, Haynes and Boone, was the law firm that represented the Debtor on an appeal of Debtor's successful state law causes of action.  After the lawsuit was settled, Haynes and Boone filed applications with the bankruptcy court requesting approval of their fees, but the Debtor objected and filed state law counterclaims against them for malpractice, violation of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of fiduciary duty.  The Court held that the bankruptcy court had the authority to adjudicate the malpractice and breach of fiduciary duty claims, but did not have the authority to adjudicate the DTPA claim. *In re Frazin*, 732 F.3d 313, 323 (5th Cir. 2013)("Because it was not necessary to decide the DTPA claim to rule on the Attorneys' fee applications, we conclude that the bankruptcy court lacked the authority to enter a final judgment as to that claim.").

### B.  Analysis of Constitutional Authority

Plaintiffs' claims do not fall within a bankruptcy court's constitutional authority. Defendant Elsa State Bank has filed two proofs of claim in the Sheltons' bankruptcy case.  The only proof of claim that has any bearing on Plaintiffs' state law claims is Elsa State Bank's $697,887.86 claim, $515,000.00 of which is secured by the real property at issue, and the remaining $182,887.86 is unsecured. (Case No. 14-07001, ECF No. 1-4 at 3).   Defendants Aguirre & Patterson and Frank Arevalo have not filed any proofs of claim in the Sheltons' bankruptcy case.

In this case, it appears that the parties may have consented to this Court's adjudication of the Sheltons' claims.  However, in light of *In re BP RE*, the Court finds that the parties cannot consent to the adjudication of claims that are outside the constitutional scope of a bankruptcy court's authority.

The public rights exception is inapplicable because the debtors' state law claims are not "integrally related to a particular federal government action."  *Stern*, 131 S. Ct. 2594 at 2613. Nor is this proceeding integrally bound up in the bankruptcy.  In *Stern v. Marshall*, the Supreme Court stated that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.").   To determine whether a state law claim can be ruled upon by a bankruptcy court, the Court must employ "the test from *Stern* to determine whether any of these counterclaims would necessarily have been resolved in the **claims-allowance process**." *In re BP RE, L.P.*, 735 F.3d 279, 290 (5th Cir. 2013)(quoting *Stern v. Marshall*).

Plaintiffs' claims against each of the three defendants are based entirely on state law, and the state-law character of those claims is in no way altered by bankruptcy law.  The only claims that are even remotely related to the bankruptcy process are Plaintiffs' claim against Elsa State Bank, the only defendant that has filed a proof of claim in the Debtors' Chapter 13 case.

In *In re Frazin*, the Fifth Circuit held that it was not necessary to decide the Debtor's DTPA claim in ruling on the Defendant Attorneys' fee applications.  Although it may be necessary to adjudicate the claims against Elsa State Bank to the extent that the claims would result in an offset, the Plaintiffs seek recovery in excess of the amount of a potential offset. (ECF No. 1 at 3).  Accordingly, none of Plaintiffs' claims stem from the bankruptcy itself or would necessarily be resolved in the claims allowance process.  The Court finds that Plaintiffs' claims fall outside the Bankruptcy Court's constitutional authority.

A dismissal with prejudice is treated as an adjudication on the merits.  *Anthony v. Marion County General Hosp.,* 617 F.2d 1164, 1169-70 (5th Cir. 1980).  Accordingly, this Court may not issue a final order or judgment dismissing Plaintiffs' suit.  The Court may, however, issue interlocutory orders in proceedings in which the Court does not have authority to issue a final judgment. *See West v. WRH Energy Partners LLC (In re Noram, Inc.),* 2011 WL 6936361, at *1 (Bankr.S.D.Tex. Dec. 30, 2011) (stating that interlocutory motion to dismiss does not implicate constitutional limitations on Court's authority).  An order granting Plaintiffs leave to amend their complaint is an interlocutory order. *See Bush v. Keith*, 129 F. App'x 108, 109 (5th Cir. 2005)(holding that an order granting plaintiffs leave to amend was an interlocutory order).

### A.  Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498

F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. Fed. R. Civ. P. 9(b). *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

## B. Plaintiffs' Complaint

Plaintiffs purport to summarize the facts of the case in the "Factual Allegations" section of their complaint. Although this section includes some factual allegations, it primarily consists of legal conclusions. For purposes of this motion, the Court will only accept Plaintiffs' factual allegations as true, not their conclusions of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

For each of the following claims, the Sheltons either (i) make conclusory statements to support each element of the cause of action or (ii) they fail to make even conclusory allegations to sustain the cause of action.

### 1. Breach of Contract

To establish a claim for breach of contract, Plaintiffs must show: (1) the existence of a valid contract; (2) performance or tender of performance by the Plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *See Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001).

For their claim against Aguirre & Patterson, Plaintiffs have failed to plead the existence of a contract between Plaintiffs and Aguirre & Patterson. The complaint merely states that "Defendants have failed to perform their contractual obligations" without even alleging that the parties have a contract. (ECF No. 1 at 4). Although it is unclear, the Plaintiffs appear to be arguing that Aguirre & Patterson breached its contract with Elsa State Bank by failing to perform

an accurate appraisal and that this resulted in damages to Plaintiffs. Even if the Court were to accept these conclusory statements as true, Plaintiffs would not be entitled to relief for breach of a contract to which they are not a party. Accordingly, Plaintiffs' breach of contract claim against Aguirre & Patterson fails to state a claim upon which relief can be granted.

With respect to their claim against Elsa State Bank, Plaintiffs have failed to identify any provision of the loan agreement that was breached by Elsa State Bank. *See Mae v. U.S. Prop. Solutions, L.L.C.*, 2009 WL 1172711 (S.D. Tex. Apr. 28, 2009) (dismissing a breach of contract claim for failure to assert which provision of the note was breached). Plaintiffs allege that Elsa State Bank has "failed to perform their contractual obligations, specifically, obtain an accurate appraisal based upon true comparables according to appraisal industry standards which would support a proper loan on Plaintiffs' property." (ECF No. 1 at 6).

Plaintiffs' conclusory statement that Elsa State Bank failed to perform its contractual obligations is not supported by any factual allegations. The loan agreement attached by Plaintiffs does not contain any provision that the bank would provide the loan after an appraisal on the property, or that Elsa State Bank was obligated to obtain an appraisal at all. Accordingly, Plaintiffs' breach of contract claim against Elsa State Bank fails to state a claim upon which relief can be granted.

Finally, Plaintiffs have failed to plead the existence of a contract between Plaintiffs and Frank Arevalo. Mr. Arevalo was acting as an agent of Elsa State Bank in all of his dealings with the Plaintiffs. The Plaintiffs have not alleged that Mr. Arevalo acted in his individual capacity. They have not demonstrated any contract with Mr. Arevalo. Nor have the Plaintiffs raised a claim for piercing the corporate veil. Accordingly, Plaintiffs' breach of contract claim against Frank Arevalo fails to state a claim upon which relief can be granted.

### 2.  *Common Law Fraud*

Plaintiffs' fraud claims do not satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).  In order to establish a claim for fraud, Plaintiffs must show that (1) Defendant made a material representation that was false; (2) Defendant knew it was false when made or made it recklessly as a positive assertion without any knowledge of its truth; (3) Defendants intended Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied on the misrepresentation and suffered injury. *See Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 303 (Tex. App. 2009).

Plaintiffs' fraud claims consist of a recital of the elements of fraud, supported by conclusory statements.  They allege that all three defendants represented that the appraisal performed by Aguirre & Patterson was an independent appraisal done to determine the true value of the property.  They claim these representations were false because "the property was seriously over appraised containing multiple errors that misled the bank and the Plaintiffs, inter alia, the properties that were used for comparison were not comparable to Plaintiffs' property in significant characteristics nor value." (ECF No. 1 at 4).

They also allege that all three parties "failed to disclose that the company was performing the appraisal for the benefit of the bank to support a value for the property in excess of the true value therefore making the property vulnerable to financial failure and to saddle the Plaintiffs with a financial burden which would impose serious strain upon their financial well being and cause them great emotional distress and mental anguish, although it knew or should have known such facts." (ECF No. 1 at 4).

Plaintiffs' complaint is devoid of many details on who made the representations and to whom they were made. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th

Cir.2003)( "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.").  For example, with regards to their claim against Elsa State Bank, Plaintiffs do not identify the person who made such representations on behalf of Elsa State Bank.  With regards to its claim against Aguirre & Patterson, Plaintiffs allege that Aguirre & Patterson made representations to Elsa State Bank, but they fail to identify the agent or employee of Elsa State Bank to whom the representations were made.

Plaintiffs do not even allege that Aguirre & Patterson made any representations to the Plaintiffs.  They claim that on April 26, 2010, Aguirre & Patterson represented to *Elsa State Bank* that the appraisal was an independent appraisal representing the true value of Plaintiffs' property and that they "relied upon Patterson's representation made to Elsa State Bank." (ECF No. 1 at 4).

Plaintiffs recite the following legal conclusions in pleading their fraud claims against each defendant: (i) Aguirre & Patterson overvalued the property for the bank's benefit, (ii) each defendants knew or should have known the property was overvalued, (iii) each Defendant intended to induce Plaintiffs to enter the loan agreement, and (iv) Plaintiffs' justifiable reliance on these misrepresentations and omissions caused them financial burden, emotional distress, and mental anguish. Plaintiffs have not pled any facts to support these legal conclusions.

The Plaintiffs have failed to provide the Court with any factual basis to support their legal conclusion that Defendants' representations (that the property was over-valued and the appraisal was independent) were false.  Plaintiffs failed to identify (i) how much Mr. Patterson appraised the plaintiffs' property for, (ii) any evidence suggesting that the true value of the plaintiffs' property should have been less, and (iii) any details about the appraisal such as which "comparable" properties were used and why such properties were not appropriate comparable

properties. Even if the Court accepts Plaintiffs' conclusion that these representations were false, Plaintiffs have not alleged any facts that suggest that any defendant knew these representations were false when made or that they were made recklessly.  Nor do the Plaintiffs plead any facts to support their conclusory statements that each defendant intended Plaintiffs to act upon Defendants' representations and omissions.

Plaintiffs also fail to allege how they detrimentally relied on the defendants' representations. *See Garcia v. Universal Mortgage Corp.*, No. 3:12- CV-2460-L, 2013 WL 1858195, at *9 (N.D. Tex., May 3, 2013) (noting, in dismissing a claim for fraud under Fed. R. Civ. P. 12(b)(6), the plaintiffs' failure to explain how they changed positions based on the representations at issue or how they were harmed as a result.).  Plaintiffs simply state that "the representations and omissions made by Defendant were material in that without such representations Plaintiffs would not have entered into the loan agreement with the bank." (ECF No. 1 at 9).  Even if the Court accepts Plaintiffs' conclusory allegations that Defendants representations were false, Plaintiffs don't even attempt to explain why they would not have entered the loan agreement had they known the appraisal was over-valued and that it was not an independent appraisal.

Finally, the Plaintiffs have failed to articulate how they were harmed by defendants' representations.  They state that "Plaintiffs have been injured as a direct and proximate result of the foregoing fraudulent acts of Defendants, specifically payment of excessive principal and interest, forced to make renewals of loan agreements, all to their financial damage…" (ECF No. 1 at 16).  Their argument appears to be that the over-valued appraisal resulted in the bank loaning the Plaintiffs too much money.  Plaintiffs' did not sufficiently plead how defendants'

representations caused them harm.  In general, there is no claim for damages from a bank allowing a borrower to borrow the amount requested by the borrower.

Plaintiffs have failed to plead sufficient facts for any of the elements of common law fraud.  Accordingly, their common law fraud claim against each defendant fails to state a claim upon which relief can be granted.

### 3.  *Fraudulent Inducement*

Like fraud claims, fraudulent inducement claims are subject to the heightened pleading requirement of Rule 9(b). *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 994 (S.D. Tex. 2011).  To state a claim for fraudulent inducement, a plaintiff must prove the elements of fraud as they relate to *an agreement between the parties. See Hasse v. Glazner*, 62 S.W.3d 795, 798-9 (Tex. 2001)( "Fraudulent inducement, however, is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.").  A plaintiff must show that a contractual promise was made by the defendant with no intention of performing, or that the contract was originally obtained by false statements or fraudulent conduct.

Two of the defendants, Frank Arevalo and Aguirre & Patterson, did not enter into an agreement with the Plaintiffs.  This by itself warrants dismissal of Plaintiffs' claims against Frank Arevalo and Aguirre & Patterson.

As for the claim against Elsa State Bank, Plaintiffs have failed to plead the elements of fraud with particularity for the same reasons discussed above.  Accordingly, their claim against Elsa State Bank fails to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b). *See Miller v. CitiMortgage, Inc.*, No. 3:11-CV-2786-L, 2013 WL 4766808, at *8 (N.D. Tex. Sept. 5,

2013) (stating that the plaintiffs' vague allegations and conclusory explanations were not sufficient under Rule 9(b)).

Plaintiffs do not allege any facts to show that they were induced into entering into the loan agreement based on Defendants' representations. Nor do the Plaintiffs state how they changed their position based on Defendants' representations or explain why they would not have entered into the loan agreement had they known the appraisal was performed differently. *Garrett v. PNC Mortgage Co.*, 2012 WL 1835864 (N.D. Tex. Apr. 16, 2012) (noting that Plaintiff failed to state how she relied to her detriment on the representation when dismissing claim). Accordingly, Plaintiffs' fraudulent inducement claims against each of the defendants fail to state a claim upon which relief can be granted.

### 4. *Negligent Misrepresentation*

Although Federal Rule of Civil Procedure 9(b) does not generally apply to claims of negligent representation, the heightened pleading standards do apply if "'(1) a plaintiff waives arguments to the contrary or (2) the inadequate fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." *Kitchell v. Aspen Exploration, Inc.*, 562 F.Supp 843, 852 (E.D. Tex. Sept. 2007)(quoting *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co.*, 362 F.Supp.2d 744, 752 (N.D. Tex. 2005). Plaintiffs' claims for negligent misrepresentation and fraud surround a common nucleus of operative facts. Because the claims in this case for negligent misrepresentation and fraud are "factually inseparable," Rule 9(b) governs the pleading requirements for Plaintiffs' negligent misrepresentation claims. *See id*.

The elements for negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary

interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation." *Biggers v. BAC Home Loan Serv. LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. 2011)(citing *Fed. Land Bank Ass'n v. Sloan*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiffs rely on conclusory statements for three of the four elements of their negligent misrepresentation claims. First, they failed to plead sufficient facts to show that any of the defendants' representations were false. Each Defendant allegedly made two representations: (i) that Aguirre & Patterson performed an independent appraisal and (ii) that such appraisal represented the true value of Plaintiffs' property. As discussed above, Plaintiffs failed to provide the Court with any factual allegations to support their legal conclusion that these representations were false: Plaintiffs did not even identify how much the property was appraised for or any evidence to support its conclusion that the true value of the property was less than the appraised value.

Second, even if these representations were false, Plaintiffs did not articulate how these defendants failed to exercise reasonable care in obtaining or communicating the information. Plaintiffs merely state that "Defendant failed to exercise reasonable care or competence in obtaining or communicating such information represented." (ECF No. 1 at 16). The court has no factual allegations to suggest that any of the defendants knew or should have known that the appraisal was performed improperly.

Finally, Plaintiffs fail to explain how they relied on any of the representations to their detriment. *See Biggers*, 767 F.Supp. at 734 (stating that the claim failed due to lack of facts to

show detrimental reliance).  They make the conclusory allegation that they "justifiably relied on the misrepresentation of the Defendant, resulting in pecuniary loss." (ECF No. 1 at 16).

Accordingly, Plaintiffs' negligent misrepresentation claims fail to state a claim upon which relief can be granted.

### 5. *Breach of Fiduciary Duty*

To establish a claim for breach of fiduciary duty, Plaintiffs must show: (1) Plaintiffs and Defendant had a fiduciary relationship; (2) Defendant breached its fiduciary duty to Plaintiffs and (3) the breach resulted in injury to Plaintiffs or benefit to Defendant. *See Williams v. Countrywide Home Loans, Inc.,* 504 F. Supp. 2d 176, 192 (S.D. Texas 2007)(citing *Jones v. Blu*me, 196 S.W.3d 440, 447 (Tex. App.— Dallas 2006, pet denied). Plaintiffs' breach of fiduciary claims should be dismissed because none of the defendants had a fiduciary relationship with the Plaintiffs.

Plaintiffs do not even attempt to articulate a theory for why any of the defendants owed a fiduciary duty to the Plaintiffs.  Fiduciary duties arise as a matter of law in certain formal relationships or from certain informal confidential relationships between the parties. *Casterline*, 761 F. Supp.2d at 491.  Elsa State Bank did not owe a fiduciary duty to the Plaintiffs because Texas law does not recognize a fiduciary relationship between a lender and a borrower.  *See Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1006 (S.D. Tex. 2011)( "The Texas Supreme Court has held that a duty of good faith is imposed in a contract where there is a "special relationship" characterized "by shared trust or an imbalance in bargaining power. But Texas courts have held that such a "special relationship" does not apply to the relationship between a mortgagor and mortgagee.").

Frank Arevalo, as loan officer for Elsa State Bank, did not owe a fiduciary duty to the Plaintiffs. Plaintiffs do not allege that Mr. Arevalo ever stated or implied that he was representing the Plaintiffs' interests. At all times, Mr. Arevalo was apparently acting as an agent of Elsa State Bank.

Nor did Aguirre & Patterson, the real estate appraiser hired by Elsa State Bank, owe a fiduciary duty to the Plaintiffs.  The Court could not find any court that has held that a real estate appraiser hired by a lender owes a fiduciary duty to the borrower.

Accordingly, Plaintiffs' breach of fiduciary duty claims fail to state a claim upon which relief can be granted.

### 6.  *Constructive Fraud*

Under Texas law, "constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Anderson v. Nat'l City Mortgage*, 3:11-CV-1687-N, 2012 WL 612562 (N.D. Tex. Jan. 17, 2012) (citing *Archer v. Griffith,* 390 S.W.2d 735, 740 (5th Cir.1960).

With constructive fraud, the actor's intent is irrelevant. *See Tex. Integrated Conveyor Syst.,* 300 S.W.3d at 366 (citing *Barnett v. Barnett,* 67 S.W.3d 107, 126 (Tex.2001)). Because constructive fraud does not require proof of *scienter,* Rule 9(b)'s heightened pleading requirements do not apply, and the pleading of a constructive fraud claim must only comply with Rule 8(a). *In re Juliet Homes, LP*, 07-36424, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010).  To state a plausible claim for constructive fraud under Federal Rule of Civil Procedure 8(a), the pleading *must allege the existence of a special relationship* between plaintiff and

defendant.  Plaintiffs failed to allege the existence of a formal or informal fiduciary relationship, or the existence of any other special relationship with any of the defendants.

There are no factual allegations that even suggest that Plaintiffs and Aguirre & Patterson had a special relationship or that they owed a duty to Plaintiffs.  They merely claim that "Defendant acted so as to abuse the trust and confidence the Plaintiffs had placed in Defendant, because Aguirre & Patterson, Inc. represented the company and its appraisers as independent appraisers with the professional responsibility to perform an independent appraisal according to industry standards to determine the true value of commercial property." (ECF No. 1 at 12).

As for Elsa State Bank, Plaintiffs claim that "Defendant acted so as to abuse the trust and confidence the Plaintiffs had placed in Defendant, because Plaintiffs were specifically referred to the bank for its reputation for particular competency in loan transaction such the transactions presented to the bank by plaintiffs." (ECF No. 1 at 13).  However, as mentioned above, Texas law does not recognize a fiduciary relationship between a mortgagor and mortgagee. *See Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1006 (S.D. Tex. 2011).  Accordingly, Elsa State Bank did not owe a fiduciary duty to the Plaintiffs.

As for Frank Arevalo, Plaintiffs allege that "Defendant acted so as to abuse the trust and confidence the Plaintiffs had placed in Defendant, because Arevalo presented himself as a professional banker and experienced loan officer and assured the Plaintiffs that Aguirre & Patterson, Inc. was a reputable appraisal company experienced in commercial property appraisals and would perform an independent appraisal." (ECF No. 1 at 12).   Plaintiffs do not allege that Mr. Arevalo ever stated or implied that he was representing the Plaintiffs' interests. At all times, Mr. Arevalo was acting as an agent of Elsa State Bank.   Accordingly, Mr. Arevalo did not owe a fiduciary duty to the Plaintiffs.

Plaintiffs have failed to satisfy the pleading requirements under Rule 8(a) for their constructive fraud claims).

### 7. *Promissory Estoppel*

To state a claim for promissory estoppel, Plaintiffs must plead (1) a promise, (2) foreseeability of reliance by the promissor, (3) substantial and reasonable reliance by the promisee to its detriment, and (4) that enforcement of the promise is necessary to avoid injustice. *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1002 (S.D. Tex. 2011)(citing *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex. App. 1993).  The entirety of Plaintiffs' promissory estoppel claim is the incorporation of their "factual allegations," coupled with the following statement: "In the alternative, Plaintiffs seek to recover for the costs incurred by Plaintiffs in detrimental reliance on the promises of the Defendants, Aguirre & Patterson, Inc., Frank Arevalo, and Elsa State Bank."  (ECF No. 1 at 17).  The Plaintiffs have not even made conclusory allegations for the elements of their promissory estoppel claims.  Accordingly, Plaintiffs have failed to satisfy the pleading requirements under Rule 8(a) for their promissory estoppel claims.

### 8. *Declaratory Relief*

A declaratory judgment is appropriate only when there is a justiciable controversy about the rights and status of the parties, and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995); *see Miller v. CitiMortgage, Inc*., No. 3:11-CV-2786-L, 2013 WL 4766808 at *17 (N.D. Tex. Sept. 5, 2013).

Plaintiffs' request for declaratory relief is as follows: "Pursuant to the Uniform Declaratory Judgment Act, Texas Civil Practice and remedies 37.001et seq., Plaintiffs request that the Court construe the agreement between Billy Antonio Shelton and Hilda Suzanne Shelton

and Aguirre & Patterson, Inc., Frank Arevalo and Elsa State Bank to determine their respective rights, obligations and liabilities under the Contract." (ECF No. 1 at 6).

Plaintiffs only have a contract with Elsa State Bank. Plaintiffs allege that Elsa State Bank failed to perform its contractual obligations because it did not obtain an accurate appraisal. However, the loan agreement attached by Plaintiffs does not contain any provisions that even refer to an appraisal, much less create an obligation for Elsa State Bank. Nor do the Plaintiffs allege that there was an implied or oral promise by Elsa State Bank to obtain an appraisal.

The Plaintiffs have failed to plead any plausible causes of action against any of the defendants. Accordingly, Plaintiffs' claim for declaratory relief does not satisfy the pleading requirements under Rule 8(a).

## Leave to Amend

In their response to defendants' motion to dismiss, Plaintiffs requested the opportunity to replead their claims to comply with the findings of the Court. Because the Plaintiffs have not yet had an opportunity to amend their pleadings, the Court grants Plaintiffs leave to amend their complaint.

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). A decision to grant leave is within the discretion of the Court, but Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir.2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,* 195 F.3d 765, 770 (5th Cir.1999)). The Court does not have the discretion to deny leave to amend unless it has a substantial reason for doing so. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),* 88 F.3d 311, 314 (5th Cir.1996) (citations omitted). "In deciding whether to grant such leave, the court may consider such factors

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

The court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.")

In this case, there is no substantial reason to deny leave to amend. The Court therefore grants Plaintiffs leave to amend each of its claims against defendants.

If the Plaintiffs fail to satisfy the pleading requirements for any of their claims by May 8, 2014, the Court will recommend that the District Court grant Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **April 18, 2014.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE